UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL EVITT,

           Plaintiff,

  v.

WELLS FARGO BANK, N.A.,

           Defendant.

CASE NO. CV24-5734 BHS

ORDER

THIS MATTER is before the Court on plaintiff Michael Evitt's motion for remand, Dkt. 8. Because this Court has diversity jurisdiction over Evitt's claims, the motion is **DENIED**.

## I.   BACKGROUND

In May 2022, a non-party fraudster accessed Plaintiff Michael Evitt's Wells Fargo checking account and made 18 separate "bill pay" transactions between $999.00 and $1000.00. He or she also established "overdraft protection" on the account, attached to Evitt's Wells Fargo credit card. Wells Fargo denied Evitt's claim that the charges were fraudulent and charged him 24.24–28.99% interest on the "debt." It also reported Evitt's overdrafts and account balances to credit reporting agency Trans Union. Dkt. 1-3 at 2–3.

ORDER - 1

Evitt's Wells Fargo account agreement required him to arbitrate, rather than litigate, his claims (1) disputing Wells Fargo's determination that the transactions were not fraudulent, (2) that Evitt did not owe the money to Wells Fargo, and (3) that Wells Fargo's reporting to Trans Union that he did owe a debt was inaccurate.

The arbitration was held in August 2023. The arbitrator's November 17, 2023, Decision found and concluded that the transactions *were* fraudulent, and that Evitt *did not owe* Wells Fargo $18,000. It ordered Wells Fargo to refund the money he had paid on the debt, and to stop reporting the inaccurate debt:

> Final Award
>
> NOW THEREFORE, Claimant Michael Evitt is awarded damages of $ 10,500. Wells Fargo is ordered to refund all amounts in excess of $10,500 paid by Mr. Evitt for the purported cash advances, remove the debt from his credit card account, refrain from collecting monthly payments from Mr. Evitt, cease reporting the debt to credit reporting agencies and report the dispute between Mr. Evitt and Wells Fargo as resolved in his favor.

Dkt. 1-3 at 20.

Evitt then brought a Fair Credit Reporting Act (FCRA) claim against Wells Fargo in this Court, arguing Wells Fargo simply ignored the arbitrator's decision. *Evitt v. Wells Fargo*, No. 23-cv-6121 BHS, Dkt. 1 (W.D. Wash. Dec. 8, 2023). Wells Fargo moved for a judgment on the pleadings, which the Court denied. *Id.*, Dkt. 15.

Based at least in part on the Court's order in the prior case, Evitt served Wells Fargo with a state court Summons and Complaint, asserting that its conduct violated the Washington Consumer Protection Act (CPA). Dkts. 1 at 1; 1-3. He sought, in part, a permanent injunction enjoining Wells Fargo from "ever again forcing . . . a Washington citizen to engage in arbitration." Dkt. 1-3 at 12–13. Before Evitt filed the Complaint in Pierce County Superior Court, Wells Fargo removed the action to this Court, asserting

that the parties were of diverse citizenship and that the amount in controversy exceeded $75,000. Dkt. 1 at 2. Wells Fargo submitted a diversity disclosure statement stating that it is a citizen of South Dakota and that Evitt is a citizen of Washington. Dkt. 11.

Evitt argues this Court does not have diversity jurisdiction over this case because his claims do not meet the $75,000 threshold, *Id.* at 5, and "there is no diversity in this case," Dkt. 12 at 2. Evitt also seeks sanctions against Wells Fargo, contending the removal is frivolous and in bad faith. Dkt. 8 at 1.

## II. DISCUSSION

A defendant may remove any civil action brought in state court over which federal district courts have original jurisdiction. 28 U.S.C. § 1441(a). Removal based on diversity requires that parties have diverse citizenship and an amount in controversy greater than $75,000. 28 U.S.C. § 1332(a).

**A.    Diversity of citizenship**

Federal diversity jurisdiction requires complete diversity between adverse parties. *Teledyne, Inc. v. Kone Corp*, 892 F.2d 1404, 1408 (9th Cir. 1989). An individual is a citizen of their state of domicile. *See, e.g., Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A corporation is a citizen of the state in which it is incorporated and "where it has its principal place of business." 28 U.S.C. § 1332(c).

National banks are "citizens of the States in which they are respectively located." 28 U.S.C. § 1348. The Ninth Circuit has interpreted this to mean "a national bank is a citizen *only* of the state in which its main office is located." *Rouse v. Wachovia Mortg., FSB*, 747 F.3d 707, 715 (9th Cir. 2014) (emphasis added) (citing *Wachovia Bank v.*

*Schmidt*, 546 U.S. 303 (2006)). In that case, the court held, in relevant part, that "Wells Fargo is a citizen only of South Dakota." *Id.*

The complete diversity requirement is satisfied here. Evitt is a citizen of Washington, Dkt. 1-3 at 5, and Wells Fargo is a citizen of South Dakota, *Rouse*, 747 F.3d at 715. Wells Fargo persuasively demonstrates that its citizenship has not changed since *Rouse*. Dkt. 13 at 16; Dkt. 13-7 at 2. The parties have diverse citizenship.

**B.     Amount in Controversy**

The amount in controversy constitutes the "potential amount at stake in the litigation," *Jauregui v. Roadrunner Transportation Services, Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) (emphasis omitted), as "determined by the complaint operative at the time of removal," *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 415 (9th Cir. 2018). In the context of injunctive relief, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State. Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977). For example, in *Hunt*, the plaintiff sought a permanent injunction against the enforcement of a statute it challenged as unconstitutional. *Id.* at 336, 339. The Supreme Court assessed the "losses that [would] follow from the statute's enforcement" to determine the amount in controversy. *Id.* at 347.

When the amount in controversy is not facially evident on the complaint, the defendant bears the burden of proving by a preponderance of the evidence that the jurisdictional amount is met. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). This means the defendant "must provide evidence establishing that

it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

Though the arbitration award underlying the dispute is $10,500, the "object" of Evitt's suit is broad injunctive relief against Wells Fargo "ever again" pursuing arbitration with any of its Washington customers. *See Hunt*, 432 U.S. at 347; Dkt. 1-3 at 11. Accordingly, to determine the amount in controversy, the Court looks at what the requested injunction would cost Wells Fargo. Wells Fargo states that it enters into arbitration agreements for all its deposit account users, Dkt. 13-3 at 39, and has the fourth largest share of Washington's bank deposit market, Dkt. 13-7 at 2. Wells Fargo establishes by a preponderance of the evidence that an injunction against arbitration in Washington would cost more than $75,000. The Court concludes the claims meet the jurisdictional amount.

**C.    Consolidation with Case No. 3:23-cv-6121 BHS**

Evitt has a pending FCRA action against Wells Fargo regarding the same arbitration award. *Evitt v. Wells Fargo*, No. 3:23-cv-6121 BHS, Dkt. 1 (W.D. Wash. Dec. 8, 2023). Evitt is ordered to show cause why the two cases should be consolidated.

### III.    ORDER

Therefore, it is hereby **ORDERED** that Evitt's motion to remand, Dkt. 8, is **DENIED**.

//

//

1 | Dated this 5th day of November, 2024.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge

ORDER - 6